**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

RANDY SHEPARD,

          Plaintiff,

vs.

CITY OF WATERLOO,

          Defendant.

No. 14-CV-2057-LRR

**ORDER**

---

*TABLE OF CONTENTS*

I.      *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *2*

III.   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . *3*

IV.   *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . *3*

V.    *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . *5*

       A.    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
       B.    *The Collective Bargaining Agreement* . . . . . . . . . . . . . . . . . . . . . *5*
       C.    *The Letter Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
       D.    *The Payroll Change* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
       E.    *The Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

VI.   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

       A.    *The "Regular Rate" Under the FLSA* . . . . . . . . . . . . . . . . . . . . *12*
            1.    *Whether the CBA or Letter Agreement controls* . . . . . . . . . *13*
            2.    *Whether the contract rate is Shepard's base
                regular rate* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*
            3.    *How the City must account for longevity pay and
                sick leave payout* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *27*

         *a.*      *The longevity pay calculation* . . . . . . . . . . . . . **27**

         *b.*      *The sick leave payout calculation* . . . . . . . . . . **31**

   **B.**    **Contractual Overtime Premium Credits** . . . . . . . . . . . . . . . . . . . **33**

       **1.**     **Whether the City is entitled to credits** . . . . . . . . . . . . . . . . **34**

         *a.*      *Section 207(e)(5)* . . . . . . . . . . . . . . . . . . . . . **35**

         *b.*      *Section 207(e)(6)* . . . . . . . . . . . . . . . . . . . . . **38**

       **2.**     **On what basis the City may apply the credits** . . . . . . . . . . . **39**

       **3.**     **The City's credits calculation** . . . . . . . . . . . . . . . . . . . . . **43**

   **C.**    **The FLSA Overtime Calculation** . . . . . . . . . . . . . . . . . . . . . . . . **45**

   **D.**    **Willful Violation And Liquidated Damages** . . . . . . . . . . . . . . . . . **51**

   **E.**    **Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **54**

**VII.**  **COSTS AND ATTORNEYS FEES** . . . . . . . . . . . . . . . . . . . . . . . . . . **55**

**VIII.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **56**

## I. INTRODUCTION

The matter before the court is Defendant City of Waterloo's ("City") "Motion for Summary Judgment" ("Motion") (docket no. 11).

## II. RELEVANT PROCEDURAL HISTORY

On August 15, 2014, Plaintiff Randy Shepard filed a Petition ("Petition") (docket no. 3) in the Iowa District Court for Black Hawk County. The Petition sets forth five claims: (1) the City willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 2, for failing to pay overtime for all hours worked over forty; (2) the City willfully violated the FLSA by failing to pay his regular rate "for all hours up to [forty] per week when more than [forty] hours were worked; (3) the City willfully violated the FLSA by failing to pay Shepard the correct overtime rate; (4) the City willfully violated the FLSA by failing to accurately account for a longevity bonus in Shepard's regular rate; and (5) the City violated the Iowa Wage Payment Collection Law ("IWPCL"), Iowa Code § 91A. On September 4, 2014, the City removed the action on the basis of federal question jurisdiction, bringing the case before the court. *See* Notice of Removal (docket no. 2).

On August 20, 2015, the City filed the Motion.[1]  On September 10, 2015, Shepard filed a Resistance (docket no. 15).  In the Resistance, Shepard abandons his IWPCL claims, leaving only the FLSA claims intact.  *See* Brief in Support of the Resistance (docket no. 15-4) at 7-8.  On September 21, 2015, the City filed a Reply (docket no. 16).  The City requests oral argument, but the court finds that oral argument is unnecessary.  The Motion is fully submitted and ready for decision.

## *III. SUBJECT MATTER JURISDICTION*

The court has original jurisdiction over the instant action because Shepard's claims arise under the FLSA, 29 U.S.C. § 216(b).  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## *IV. SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show" an absence of a genuine dispute as to a material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011)

---

[1] On April 14, 2015, Shepard sought class certification for himself and approximately 102 similarly situated employees.  *See* Request for Conditional Collective Action and Appointment of Class Counsel (docket no. 8) at 1.  However, because Shepard is appearing pro se and, consequently, cannot himself represent the putative class and because no attorney sought appointment to represent the class, the court declined to appoint counsel to the putative class and, accordingly, denied Shepard's request without prejudice. *See* May 12, 2015 Order (docket no. 10).  Shepard neither filed a new motion to certify a class nor appears to renew the motion in his Resistance.

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)), *cert. denied* 132 S. Ct. 1144 (2012). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party if a genuine dispute exists as to those facts. *See id.*; *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . .'" *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second and third alteration in original) (internal quotation marks omitted) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving party and affording him all reasonable inferences, the uncontested material facts are as follows.

### A. Parties

Shepard is an individual residing in Waterloo, Iowa, and he is employed by the City. The City is a city organized and existing under the laws of the State of Iowa.

### B. The Collective Bargaining Agreement

In 2007, Shepard was hired by the City in the position of Airport Maintenance Worker—Special Weekend/Holiday Employee. Defendant's Statement of Material Facts (docket no. 11-1) ¶¶ 1-2. Shepard's regular work hours are two nineteen-hour shifts per week on Saturday and Sunday. *Id.* ¶¶ 29-30. Shepard has been a member of the Municipal Laborers #353 union ("Union") at all relevant times. *Id.* ¶¶ 3-4. The Union and the City have a collective bargaining agreement ("CBA"), which governs various aspects of Union members' employment with the City, including wages. *Id.* ¶¶ 5-6. The CBA provides an hourly rate of pay for airport maintenance workers, such as Shepard. *Id.* ¶ 6; *see also* Defendant's Appendix in Support of Its Motion for Summary Judgment ("Appendix") (docket no. 11-2) at 67. The CBA provides the following hourly wages for Shepard's position: $22.66 for the fiscal year beginning July 1, 2012; $23.14 for the fiscal year beginning July 1, 2013; $23.81 for the fiscal year beginning July 1, 2014; and $24.52 for the fiscal year beginning July 1, 2015. Defendant's Statement of Material Facts ¶ 8; Appendix at 67.

In an addendum specifically for airport personnel, the CBA provides for a thirty-five hour workweek for Special Weekend/Holiday Employees, comprised of one Saturday shift beginning at 6:00 a.m. and ending at 11:30 p.m and one Sunday shift beginning at 6:00 a.m. and ending at 11:30 p.m., "or whenever work is completed." *Id.* at 67. Among other departures from the basic CBA, an airport employee covered by the CBA is

not entitled to any contractual overtime payments until such employee has accumulated fifty-four hours of contractual overtime.[2] *Id.* at 68.

The CBA provides for a mandatory grievance procedure. Defendant's Statement of Material Facts ¶ 43; Appendix at 42 ("[I]t is understood and agreed that for those matters, which fall within the definition [of 'grievance'] of this Article, the procedure set forth herein shall constitute the sole and exclusive remedy of the parties hereto, and the employees included herein."). A grievance is defined as a "claim presented by an employee(s) alleging a violation, misinterpretation or misapplication of a term or specific provision(s) of this Agreement." Defendant's Statement of Material Facts ¶ 41 (quoting Appendix at 40). The grievance procedure is a five-step process ending in binding arbitration. *Id.* ¶ 42; Appendix at 40-41. Shepard has not filed a grievance regarding any of the issues currently before the court. Defendant's Statement of Material Facts ¶ 44.

The CBA also provides for "longevity pay." Longevity pay is a monthly bonus payment based on the number of years the employee has served the City. *Id.* ¶ 15. The amount of longevity pay generally remains the same regardless of the number of hours an employee works in a given month. *Id.* ¶ 16. Beginning in January 2012, Shepard's longevity bonus was $90 per month and increased to $100 per month beginning in January 2014. *Id.* ¶ 17; Appendix at 16-17. Though longevity pay is determined monthly, the payment is prorated into employees' bi-weekly pay periods. Defendant's Statement of Material Facts ¶ 18. Prior to the City's change in payroll systems in January 2013, the longevity pay was simply divided between two bi-weekly pay periods in a given month. *Id.* ¶ 19. In months with three bi-weekly pay periods, the final pay period would not encompass any longevity pay because the longevity payment had already been accounted

---

[2] Though no party has provided an explanation as to the fifty-four hour overtime "sink," it appears as if the fifty-four hours spread over the entire year is meant to compensate for the fact that the airport employees are working only thirty-five, as opposed to forty, hour workweeks.

for in the first two bi-weekly pay periods for that month. *Id.* ¶ 20. However, after the change in January 2013, the City computed longevity pay by totaling all the longevity pay due during the given year and dividing it evenly among each bi-weekly pay period for that year. *Id.* ¶¶ 21-22. Accordingly, after the change in payroll systems, each bi-weekly pay period accounted for an equal portion of the total longevity pay for the year. The total amount of longevity pay owed to Shepard is not in dispute in the instant action and both parties agree that Shepard was paid the correct amount of longevity pay. *Id.* ¶ 23.

Shepard is also entitled to "sick leave payout" under the CBA. The sick leave payout occurs after the end of the fiscal year and is equal to 25% of the accrued but unused sick leave for that year. *Id.* ¶¶ 25-26; Appendix at 54. That payment is a one-time payment and must occur after the fiscal year ends because the City cannot know how much unused sick time will be available to an employee until the year ends. Defendant's Statement of Material Facts ¶¶ 26-27. The total amount of sick leave payout owed to Shepard is not in dispute in the instant action and both parties agree that Shepard was paid the correct amount of sick leave payout. *Id.* ¶ 28.

### C. The Letter Agreement

On March 22, 2010, for reasons that are immaterial to the instant action but disputed by the parties, Shepard, the City and the Union entered into a separate letter agreement ("Letter Agreement"), modifying the terms of the then-existing CBA as applied to Shepard. *Id.* ¶ 29. The Letter Agreement is a handwritten document and states, in its entirety:

> Randy Shepard will be paid 40 hours straight-time for his regular Saturday and Sunday shifts. All hours worked outside his regular shift will be paid at time and a half. A regular shift on Saturday or Sunday represents a 19 hour shift starting at 5 am and ending at 12 midnight.

Appendix at 170. The Letter Agreement was signed by Robert Stringer, then the Human Resources director for the City; Bradley Hagen, then the airport director; Mark Lane, the local Union president; a second union representative; and Shepard. *Id.*

Since the parties signed the Letter Agreement, Shepard has been paid in accordance with the Letter Agreement. Defendant's Statement of Material Facts ¶ 32. In 2012, the Union and the City signed a new CBA, the terms of which the court has previously discussed. *See* Appendix at 26; Plaintiff's Statement of Material Facts (docket no. 15-1) ¶ 41. But for a brief period in 2013 in which Shepard was unsure whether to work the hours provided for in the new CBA or the Letter Agreement, Shepard has worked the hours provided for in the Letter Agreement. Defendant's Statement of Material Facts ¶ 30. Under the terms of the Letter Agreement, Shepard is paid for two hours a week, hours thirty-nine and forty, for which he does not work. *Id.* ¶ 35.

### D. The Payroll Change

As the court noted above, in early 2013, the City moved to a new payroll system. In November 2012, the City switched from pay periods running from Monday through Sunday to pay periods running Saturday through Friday in anticipation of the new payroll system. *Id.* ¶ 47. This switch-over occurred during the pay period running from Monday, November 12, 2012 to Sunday, November 25, 2012 under the old system and from Saturday, November 24, 2012 to Friday, December 7, 2012 under the new system. *Id.* ¶¶ 48-49. To effectuate the switch-over, the City ended the pay period beginning on Monday, November 12, 2012 two days early on Friday, November 23, 2012. *Id.* ¶ 50. Therefore, Shepard's normal weekend shift on November 24-25, 2012, which would normally be included in the pay period running from November 12-25, 2012 under the old system, was included in the pay period running from November 24, 2012 to December 7, 2012. *Id.* ¶ 51.

The work week of November 19, 2012, Shepard worked two nineteen-hour shifts on Thursday, November 22, 2012 and Friday, November 23, 2012. *Id.* ¶ 55. Shepard was paid straight time for these hours, even though the Letter Agreement provided that any hours worked outside Shepard's normal Saturday and Sunday shifts should be paid at time-and-a-half. *Id.* ¶¶ 56-57. The City subsequently discovered this error and attempted to rectify it on Shepard's January 23, 2015 paycheck. *Id.* ¶ 58.

The new payroll system was implemented in January 2013. *Id.* ¶ 69. Due to a glitch in the software system, the new payroll system was systematically underpaying several employees, including Shepard, for FLSA overtime premiums based on their longevity pay. *Id.* ¶ 70. The City later discovered the source of the miscalculations—a coding error during the new system's initial setup—and, on November 1, 2013, notified all affected employees of the underpayment. *Id.* ¶¶ 71-72. The City included the additional FLSA pay owed to the affected employees in that pay period's paycheck. *Id.* ¶ 72.

### E. The Dispute

In late 2013, Shepard, along with several Union representatives, approached the City regarding the Letter Agreement and the 2012 CBA. Plaintiff's Statement of Material Facts ¶¶ 44-46. There was some confusion regarding whether the hours set forth in the Letter Agreement or CBA controlled. Shepard then met with Human Resources director Suzy Schares and explained his further belief that he was entitled to double-time pay under the CBA. *Id.* ¶¶ 47-51. Schares indicated that she would look into Shepard's concerns and that he should work the hours listed in the CBA until further notice. Defendant's Supplemental Appendix in Support of its Motion for Summary Judgment ("Supplemental Appendix") (docket no. 16-2) at 4. On November 25, 2013, Schares confirmed that the Letter Agreement was still controlling and directed Shepard to return to those working

hours. Plaintiff's Statement of Material Facts ¶ 58. The Union agreed that the Letter Agreement controlled. *Id.*

During this time, Shepard filed a complaint with the Department of Labor presumably complaining of the FLSA violations alleged in the Petition. *Id.* ¶ 54. In early December of 2013, the Department of Labor informed Shepard that, because he was "paid 'for hours not worked,'" the City had committed no FLSA violations. *Id.* ¶ 63. According to the Department of Labor, the City admitted to improperly calculating some longevity bonus and shift premium for certain employees, but ultimately corrected the miscalculation. *Id.* ¶ 65, *see also id.* ¶ 56 (describing the memo the City sent to affected employees explaining the payroll system glitch that caused certain FLSA overtime premiums to be underpaid and that "affected employees received a revised calculation and 'correction' on [their] pay"). Shepard then requested the Department of Labor to confirm whether his "calculation [of overtime premiums] for hours actually worked was correct and [the Department] confirmed that it was." *Id.* ¶ 69. Subsequently, Shepard filed the Petition, realizing that the statute of limitations was running on his claims. *Id.* ¶ 76.

## VI. ANALYSIS

The City argues that the court should grant summary judgment as to all claims in the Petition because "[t]he facts material to th[e] [M]otion are undisputed. Th[e] [M]otion is based upon pure questions of law and mathematical calculations." Defendant's Brief in Support of its Motion for Summary Judgment ("Brief in Support of the Motion") (docket no. 12-1) at 4. Shepard has not moved for summary judgment, but in the absence of a genuine dispute as to a material fact, the court will grant him summary judgment if he is so entitled. *See Global Petromarine v. G.T. Sales & Mfg., Inc.*, 577 F.3d 839, 844 (8th Cir. 2009) ("This court has previously held that a determination of summary judgment *sua sponte* in favor of the prevailing party is appropriate so long as the losing party has notice and an opportunity to respond."); *Chrysler Credit Corp. v. Cathey*, 977 F.2d 447, 449 (8th

Cir. 1992) (holding that the district court's *sua sponte* grant of summary judgment for nonmoving cross-claimant defendants was appropriate where plaintiff filed for summary judgment and both the plaintiff's and cross-claimant defendant's right to summary judgment turned on the same issue).[3]

The FLSA is designed to protect employees' rights to not work in "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). It is meant "'to protect the rights of those who toil, . . . those who sacrifice a full measure of their freedom and talents to the use and profit of others.'" *Specht v. City of Sioux Falls*, 639 F.3d 814, 819 (8th Cir. 2011) (quoting *Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999)). "It does so in part by setting forth substantive wage, hour, and overtime standards." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, ___, 131 S. Ct. 1325, 1333 (2011). In accordance with those goals, the FLSA provides that, unless one of several exemptions applies, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The Eighth Circuit Court of Appeals has warned that exemptions in the FLSA should be strictly construed and that remedial provisions should be given "[a] generous reading, in favor of those whom [C]ongress intended to benefit from the law." *Kelley v. Alamo*, 964 F.2d 747, 750 (8th Cir. 1992); *see also Nw. Airlines v. Jackson*, 185 F.2d 74, 77 (8th Cir. 1950)

---

[3] The court is further guided by the fact that Shepard is appearing pro se, requiring that his pleadings be construed liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014); *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (providing that the essence of "liberal construction" is to "construe the [pleadings] in a way that permits the layperson's claim to be considered within the proper legal framework").

("[T]he Fair Labor Standards Act . . . should be strictly construed to the end that . . . exemption[s] will not be enlarged beyond [their] necessary exten[t] and in order that the Act will accomplish as fully as possible the remedial purposes for which it was designed.").

The parties neither dispute that Shepard is an employee of the City nor that he is covered under the FLSA. *See Specht*, 639 F.3d at 819-20 (providing that the initial inquiries under the FLSA are whether the employer-employee relationship exists, whether the activities in question constitute "employment" and whether the employee is covered by the FLSA or is exempt (quoting *Benshoff*, 180 F.3d at 140; *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993))). The parties' disputes center on two main issues: (1) what Shepard's "regular rate of pay" is under the FLSA and (2) whether, and to what extent, the City may credit contractual overtime premiums paid against any FLSA liability incurred. The court will consider these disputes in order.

## A. The "Regular Rate" Under the FLSA

"The computation of 'regular rate' is, of course, the first step in computing an employee's overtime." *Masters v. Md. Mgmt. Co.*, 493 F.2d 1329, 1332 (4th Cir. 1974). This is so because "[t]he keystone of . . . [29 U.S.C. § 207(a)] is the regular rate of compensation. On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); *see also* 29 U.S.C. § 207(a)(1) (setting the overtime rate as "not less than one and one-half times the regular rate"). The regular rate of pay must be determined in order to discern whether an employer has incurred statutory overtime liability. "[T]he 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee" save for several statutory exemptions. 29 U.S.C. § 207(e). It is established law that:

> [t]he regular rate by its very nature must reflect all payments
> which the parties have agreed shall be received regularly
> during the workweek, exclusive of overtime payments. It is
> not an arbitrary label chosen by the parties; it is an actual fact.
> Once the parties have decided upon the amount of wages and
> the mode of payment the determination of the regular rate
> becomes a matter of mathematical computation, the result of
> which is unaffected by any designation of a contrary 'regular
> rate' in the wage contracts.

*Youngerman-Reynolds*, 325 U.S. at 424-25. Regarding Shepard's regular rate, the parties dispute several aspects of its calculation. In particular, they dispute: (1) whether the CBA or the Letter Agreement controls; and (2) whether the "base" regular rate is the hourly rate established in the CBA or some other amount. The court will first consider these disputes, and will then consider whether and in what manner the City must include Shepard's longevity pay and sick leave payout in his regular rate.

### 1.     *Whether the CBA or Letter Agreement controls*

The City contends that Shepard cannot argue that the 2012 CBA, rather than the 2010 Letter Agreement, controls the instant action because he has failed to pursue the mandatory grievance procedure found in the CBA. Brief in Support of the Motion at 10-12; Appendix at 40, 42. Shepard argues that the CBA superseded the Letter Agreement, and that "'[r]ights conferred by Congress are conceptually distinct from those created by private agreement, and there is no authority for the proposition that rights under the FLSA merge into contractual ones whenever the two overlap.'" Brief in Support of the Resistance at 8 (quoting *O'Brien v. Town of Agawam*, 350 F.3d 279, 285 (1st Cir. 2003)). He argues that the City has provided no authority suggesting that the Letter Agreement "is controlling over the language and intent of the subsequently[] signed CBA." *Id*. at 11. Shepard maintains that the fact that the Letter Agreement contains no sunset clause is not determinative of this issue and suggests that the terms of the CBA dictate that the Letter Agreement was terminated. *Id*. at 11-12. The City recognizes the distinct nature of the

rights involved but argues that, because Shepard's FLSA claim is "inevitably intertwined" with the interpretation of the CBA, his failure to pursue the grievance procedures therein is fatal to his case. Reply Brief (docket no. 16-1) at 1 (citing *Bell v. Se. Pa. Transp. Auth.*, 733 F.3d 490, 494 (3d Cir. 2013)).

As the court previously discussed, the CBA provides for a thirty-five hour workweek and a fifty-four hour overtime "sink." Shepard believes that the hours and overtime limitations provided in the CBA should apply to him, and his calculations reflect the terms of the CBA. *See* Plaintiff's Calculation (docket no. 15-2) at 1; Brief in Support of the Resistance at 11; Appendix at 23-24. The Letter Agreement, on the other hand, provides for a thirty-eight hour workweek and contains no overtime "sink." Instead, *any* hours worked outside of the hours contained in the Letter Agreement are paid at the contractual overtime rate. The City argues that the Letter Agreement is controlling and has based its calculations on the terms of the Letter Agreement. *See* Brief in Support of the Motion at 13; Appendix at 174. According to Shepard's argument, calculating his regular rate based on a thirty-five hour workweek will produce a higher regular rate, and, thus, a higher statutory overtime rate, than a regular rate based on the thirty-eight hour workweek. Brief in Support of the Resistance at 11.

Initially, the court notes that the issue concerning the application of either the thirty-five hour workweek under the CBA or the thirty-eight hour workweek under the Letter Agreement does not give rise to a genuine issue of material fact. Instead, both parties appear to argue that the court may dispose of this issue as a matter of law. The court agrees that the question as to whether Shepard is required to proceed through the grievance process is a question of law and is amenable to summary judgment. *See AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination."). In

14

any event, Shepard has not demonstrated that a genuine issue of material fact exists as to whether the Letter Agreement or CBA controls.

When a court is faced with deciding whether a party is required to proceed through arbitration regarding a dispute over a provision in a collective bargaining agreement, "[t]he determinative question is whether the collective bargaining agreement at issue here is 'susceptible of an interpretation that covers' the grievance at issue." *Int'l Bhd. of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace N. Am., Inc.*, 431 F.3d 624, 627 (8th Cir. 2005) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). While this is undoubtedly a question of law for the courts to decide, the Supreme Court has warned that courts should avoid being goaded into deciding the underlying merits of such disputes. *Id.* (quoting *AT&T Techs., Inc.*, 475 U.S. at 649). Therefore, as an initial matter, the court is wary of Shepard's argument that the CBA has superseded the Letter Agreement, as it appears to be the exact sort of merits question that the court is directed not to consider.

As the Third Circuit Court of Appeals observed in *Vadino v. A. Valey Engineers*, "the FLSA contains no language suggesting that an action filed thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement. The enforcement provision of the FLSA is limited to employee suits seeking enforcement of their rights under the statute." 903 F.2d 253, 265 (3d Cir. 1990) (citing 29 U.S.C. § 216(b)). In *Vadino*, the employee disputed the amount of wages due under the relevant collective bargaining agreement—arguing that he should be paid "journeyman" wages under the contract. *Id.* at 257. The Third Circuit was careful to distinguish between the contract rights of the employee to be paid the correct wages, which must be "determined by the appropriate procedures to be in noncompliance with the collective bargaining agreement," and the independent right under the FLSA to "enforce his or her right to the correctly computed overtime wages by a FLSA action." *Id.* at 266.

The Third Circuit held that the former was not cognizable in federal court without prior arbitration under the collective bargaining agreement. *Id.* In other words, contractual and statutory rights are indeed independent, as Shepard argues. But where contractual rights must be established before deciding whether the employee was paid correctly under the FLSA, and where the employee has not pursued a mandatory contractual remedy, "an employee cannot circumvent the necessity of complying with the [CBA] procedure to get a determination of his or her right to the [contractual] wages claimed" via a separate action under the FLSA. *Id.* "[W]hile claims resting on the language of [S]ection 7(a) are clearly cognizable under that section, . . . claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the [Labor Management Relations Act], specifically grievance, arbitration, and, when permissible, suit in federal court under section 301." *Id.* Where such a separate procedure is required, "the court is limited to examining overtime wages on the basis of the rate actually paid." *Id.* at 264. Consequently, the court is required to treat the FLSA claims as governed by the Letter Agreement because, during the relevant time period, Shepard has been payed overtime wages based on the terms of the Letter Agreement.

In the instant action, the CBA's definition of "grievance" is certainly susceptible to an interpretation that covers the dispute at issue. Shepard seeks to have the court interpret the CBA as superseding the Letter Agreement and then enforce its terms. Shepard points to various provisions of the CBA, urging the court to "search the CBA for a termination clause of any previous agreements." Brief in Support of the Resistance at 12. He also seeks to have the court enforce the terms of the CBA against the City. Both of those requests fit squarely within the CBA's definition of "grievance"—that is, they ask the court to adjudicate "a violation, misinterpretation or misapplication of a term or specific provision(s)" of the CBA. Appendix at 40. Whether the CBA or Letter Agreement controls is a matter committed to the grievance process and in fact presents a

contract question not squarely presented to the court. The Petition seeks only actual and liquidated damages based on FLSA violations, and does not seek contract damages or declaratory relief regarding whether the Letter Agreement or CBA applies to Shepard. *See* Petition at 2. The court understands that Shepard may feel that he is improperly being scheduled to work the hours provided under the Letter Agreement when he is instead meant to be covered by the 2012 CBA. However, turning to the federal forum to litigate this ancillary dispute is inappropriate. As the City argues, if Shepard seeks to determine whether his work hours are governed by the Letter Agreement or CBA, he must proceed through the mandatory grievance process and avail himself of the remedy that process provides. Shepard cannot circumvent the procedure established to determine these issues by pinning this argument onto his FLSA claim.

Here, as in *Vadino*, the threshold contractual interpretation issue is not within the court's purview to hear and decide. Shepard's argument that his workweek should be thirty-five hours, as opposed to the thirty-eight he regularly works, is a contract question analogous to the wage dispute in *Vadino*, which the Third Circuit held must be "determined by the appropriate procedures to be in noncompliance with the collective bargaining agreement" prior to a judicial determination of FLSA liability. *Vadino*, 903 F.2d at 266. The court agrees with Shepard that the statutory rights under the FLSA and the contractual rights under the CBA are distinct, but, because Shepard has failed to adjudicate the threshold contractual issue through the grievance procedures, the court may not adjudge that issue for itself to reach the FLSA claims. Instead, the court must address Shepard's FLSA claims as governed by the Letter Agreement. Shepard may not circumvent the contractual remedies put in place by the CBA and litigate a grievance in federal court.

Further supporting the court's conclusion that the Letter Agreement is the proper contract to consider, it appears that, at all relevant times, the reality of the employment

relationship has been governed by the Letter Agreement. It is beyond dispute that the Letter Agreement was controlling between March of 2010, when the Letter Agreement was signed, and when the new CBA was signed in 2012. After the 2012 CBA was signed, the parties continued operating under the Letter Agreement. Defendant's Statement of Material Facts ¶ 30. Tellingly, in November of 2013, Shepard approached the City regarding whether the CBA or Letter Agreement controlled. Both the City and the Union confirmed that they believed the Letter Agreement was controlling. Plaintiff's Statement of Material Facts ¶ 58. At that point, Shepard, who had begun working the hours provided in the CBA at the direction of Schares, returned to working the hours provided in the Letter Agreement.[4] *Id.*; Supplemental Appendix at 4. Since that time, both Shepard and the City have complied with the terms of the Letter Agreement, implying Shepard's tacit approval of its continued use. Therefore, the parties' course of dealings suggests that the Letter Agreement is the proper agreement to consider in deciding Shepard's FLSA claims. Accordingly, the court will proceed to consider Shepard's FLSA claims as presented and governed by the Letter Agreement.

### 2. Whether the contract rate is Shepard's base regular rate

The City contends that Shepard's "base" regular rate is the hourly contract rate set forth in the CBA.[5] Brief in Support of the Motion at 13. The City argues that "[t]he Supreme Court has stated that 'as a matter of law an employer and employee may establish the 'regular rate' by contract.'" Brief in Support of the Motion at 14 (quoting *Walling v. A.H. Belo Corp.*, 316 U.S. 624, 631 (1942)). It argues that, so long as the regular rate

---

[4] Although the payroll records provided by the City do not reflect the change in working hours in Shepard's pay calculations, neither party disputes that Schares told Shepard to work the hours listed in the CBA at some point on or about November 2013. *See* Appendix at 117-19; Supplemental Appendix at 4.

[5] According to the City, the "base" regular rate is Shepard's "regular rate before factoring in bonuses." Brief in Support of the Motion at 13.

effectively respects the minimum wage rate set forth in the FLSA, employers should be free to establish the regular rate "at any point and in any manner they see fit." *Id.* (quoting *Youngerman-Reynolds*, 325 U.S. at 424). The City relies on 29 C.F.R. § 778.110(b) and argues that, when an employee is paid on an hourly basis but receives a regular "bonus," the base regular rate is still the hourly rate.

Shepard argues that the correct base regular rate should be the quotient of: (1) the product of (a) forty hours and (b) the contract rate set forth in the CBA—*i.e.*, his regular weekly pay—and (2) the amount of hours he actually works in a given week, generally thirty-eight per the Letter Agreement. *See* Brief in Support of the Resistance at 9; Appendix at 22. The practical upshot of Shepard's calculation is to produce a higher base regular rate and, thus, a higher statutory overtime rate. Shepard quotes *Youngerman-Reynolds* and argues that "[t]he regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact." Brief in Support of the Resistance at 9. Shepard argues that, because the City regularly pays him for two hours that he does not work—hours thirty-nine and forty—it effectively pays him a fixed or guaranteed wage each week. *See id.* at 10. According to Shepard, the City's attempt to include those hours in its regular rate calculation results in their mischaracterization as a "bonus," artificially deflating his regular rate. *Id.* (citing 29 C.F.R. § 778.502(e)). The City maintains that, though Shepard is paid for two hours each week that he does not work, this alone does not change his status as an hourly employee. Reply Brief at 3. Put simply, "as an hourly rate employee, the hourly rate is the base 'regular rate' for purposes of the FLSA." *Id.* at 3. Alternatively, the City argues that hours thirty-nine and forty are excludable from Shepard's regular rate calculation pursuant to 29 U.S.C. § 207(e)(2), which provides that the regular rate does not include

"payments made to an employee which are not made as compensation for his hours of employment."

"The regular rate cannot be stipulated by the parties; instead, the rate must be discerned from what actually happens under the governing employment contract." *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 37 (1st Cir. 2014) (brackets and quotation marks omitted) (quoting *O'Brien*, 350 F.3d at 294). 29 C.F.R. § 778.110(a) provides that, "[i]f the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.'" The hourly rate is still considered the base regular rate even when bonuses are subsequently added, as the City argues. *See* 29 C.F.R. § 778.110(b). However, the court declines to rely too heavily on this regulation. It is not at all clear that § 778.110 contemplates or captures the precise factual situation that the court faces here. Section 778.110 appears to contemplate that an employee is paid the hourly contractual rate *only* for hours actually worked during that workweek. In the instant action, Shepard was paid the hourly contractual rate for hours *not* actually worked during the workweek. Accordingly, "[i]n order to determine the regular hourly rate of pay, the court must ascertain the number of hours per week the [pay] was 'intended to compensate.' This intended number of hours can be determined by examining what happens under the employment contract, and may include non-overtime and overtime hours." *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 893 (S.D. Tex. 2011) (citations omitted); *see also Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 704-06 (10th Cir. 2014) (holding that the rate actually paid to certain employees was their regular rate under the FLSA rather than higher "Promised Rates" which the employees were not paid); *Yourman v. Dinkins*, 865 F. Supp. 154, 165 (S.D.N.Y. 1994), *aff'd*, 84 F.3d 655 (2d Cir. 1996), *vacated on other grounds*, 519 U.S. 1145 (1997) (holding that the hourly rate was based on 35 hours per week for certain plaintiffs because "those were the hours used by defendants in setting plaintiffs' weekly schedules" and

because "[t]hey were also the hours reflected on plaintiffs' paystubs"). The touchstone for the base regular rate determination in this instance is what actually occurs under the Letter Agreement.

Shepard has not raised a genuine issue of material fact as to whether his regular rate is the contract rate or some other rate. It is clear from the manner in which the City treats Shepard's pay that his base regular rate is the contract rate and that he is not paid a fixed or guaranteed weekly rate. The Letter Agreement states that Shepard will be paid "[forty] hours straight-time" for his regular weekend shifts. Appendix at 168. At all relevant times, the City has paid Shepard as if he worked forty hours a week. His pay stubs reflect that he is paid for two twenty-hour shifts per week, and, when Shepard uses personal time, he is still paid for two twenty-hour shifts for that personal time. *See id.* at 80-167, 174; *see, e.g.*, *id.* at 81, 89, 117-18, 120, 134, 143-45, 147, 160-62, 165. Particularly telling is what occurs in weeks where Shepard splits hours in a given workday between hours actually worked and/or various types of personal time. *See id.* at 160-63, 165. For example, for the paycheck dated May 29, 2015, Shepard worked only sixteen hours on May 16, 2015. *Id.* at 160. The pay stub reflects that the City deducted four hours from Shepard's accrued Compensatory Time.[6] *Id.* Similarly, on May 23, 2015, the payroll records reflect that nineteen hours of Casual Time were used, but that one hour was deducted from Shepard's accrued Compensatory Time. *Id.* at 162. Again on June 28, 2015, the payroll records demonstrate that seventeen hours of Casual Time were used, and that three hours were deducted from Shepard's accrued Compensatory Time. *Id.* at 165.

---

[6] Compensatory Time is a type of personal time that an employee accrues in lieu of taking contractual overtime payments. Appendix at 72. The City utilizes three types of personal time, of which Compensatory Time is one. Vacation Time is another type of personal time that simply represents "non-worked hours taken by the employee as vacation." *Id.* Casual Time is similar to Vacation Time, except that it can be sold back to the City. *Id.* All three types of personal time are paid at the contractual rate set forth in the CBA. *Id.*

In each of these workdays, in order for Shepard to receive his full pay for the week, the City required using enough personal time to bring the number of compensated hours to twenty. The reality of Shepard's employment under the Letter Agreement—the touchstone for determining the base regular rate—is that Shepard is paid for forty hours a week at the rate set forth in the contract. The City intended to compensate Shepard for forty hours a week, as reflected by the pay records and the fact that the City requires a total of forty compensable hours for each work week.

The City also argues that, if Shepard did not have personal time to fill any hours he did not work, he would not be paid for those hours. Defendant's Statement of Material Facts ¶ 12; Appendix at 9. In other words, "[i]f Shepard works less than [thirty-eight] hours per week, Shepard is only paid for the hours actually worked at the hourly rate specified in the CBA." Brief in Support of the Motion at 15. By extension, if Shepard only had thirty-eight hours of personal time and did not work two of his regularly scheduled weekend shifts, he would be compensated only for thirty-eight hours at the rate set forth in the CBA, not forty. Shepard argues that "it would be impossible to prove the [City's] theory of a pay deduction" because Shepard has never requested or taken time off that he did not have personal time to fill. Resistance to Defendant's Statement of Material Facts (docket no. 15-3) ¶ 12. However, the mere fact that Shepard does not know what would happen under the City's payroll system if such an instance occurred is not sufficient to create a genuine dispute as to a material fact. On the other hand, the City's position is supported by the Affidavit of Suzy Schares, the Director of Human Resources for the City. *See* Appendix at 8. The City has put forth evidence on this issue, and Shepard has failed to advance any evidence to support his position. Accordingly, summary judgment is appropriate. *Cf. Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991) (holding that, if the non-moving party fails to "produce specific evidence to demonstrate genuine issues for trial," then summary judgment is appropriate). The City's position further supports

the idea that Shepard's regular rate of pay is the hourly rate of pay set forth in the CBA. If Shepard's theory were correct, then he would be paid for forty hours of straight-time even if he had only thirty-eight hours of personal time to cover his regular weekend shifts. However, the City has advanced uncontroverted evidence that he would be paid only for those thirty-eight hours for which he had personal time. This conclusion is bolstered by what actually occurs under the Letter Agreement when Shepard uses personal time. When he uses personal time, the City requires that forty hours of personal time be consumed in order for Shepard to be entitled to full pay under the Letter Agreement.

Based on the foregoing, it is clear that the City has at no point treated hours thirty-nine and forty as a "bonus" as contemplated by 29 C.F.R. § 778.502. As the City correctly argues, this regulation "does not, on its face, apply to Shepard's situation." Reply Brief at 4. Instead, the regulation applies to situations wherein an "employee is guaranteed a fixed or determinable sum as his wages each week." 29 C.F.R. § 778.502(e). Though this regulation would squarely apply to the instant action if Shepard's theory were correct, Shepard is not guaranteed a fixed weekly wage but is instead compensated hourly for forty hours. Hours thirty-nine and forty do "designate a portion of regular wages which the employee is entitled to receive under his regular wage contract," but the City has not attempted to treat them in a manner that would circumvent the FLSA and, therefore, has not attempted to characterize them as a bonus at all. 29 C.F.R. § 778.502(a). As the City contends, "the City's argument concerning the calculation of Shepard's base regular rate is not founded on any type of 'bonus' theory." Reply Brief at 4. Accordingly, the court finds that the City has not treated hours thirty-nine and forty as a bonus at any relevant time in this dispute.

Alternatively, the City argues that the monies paid for hours thirty-nine and forty may be excluded from the regular rate calculation pursuant to the statutory exemption in § 207(e)(2), because they constitute "payments to an employee which are not made as

compensation for his hours of employment" and that such payments are similar to holiday or personal time, which the employer may also exclude from the regular rate calculation. Brief in Support of the Motion at 16, 19. In other words, the City seeks to calculate the regular rate without reference to monies paid pursuant to hours thirty-nine and forty under the Letter Agreement because Shepard does not actually work those hours. Under the Eighth Circuit's interpretation of § 207(e)(2) in *Acton v. City of Columbia, Mo.*, "[§] 207(e)(2), properly understood, operates not as a separate basis for exclusion, but instead clarifies the types of payments that do not constitute remuneration for employment for purposes of § 207." 436 F.3d 969, 976 (8th Cir. 2006). Accordingly, the court must consider "the express requirements of § 207(e)(2) and the federal regulations interpreting it when determining if . . . [the monies in question] constitute remuneration for employment." *Id.* at 976-77. According to the Eighth Circuit, "[r]egulation . . . 29 C.F.R. § 778.223 provides the touchstone for [this] inquiry because it addresses the scope of § 207(e)(2)." *Id.* at 977. "The plain language of the regulation makes clear that all monies paid as compensation for either a general or specific work-related duty should be included in the regular rate. The critical question before th[e] court is whether . . . [the monies in question] compensate the [employee] for some specific or general duty of employment." *Id.*

In *Acton*, the Eighth Circuit considered whether a sick leave payout program similar to the one in the instant action constituted "remuneration for employment" and thus fell outside § 207(e)(2)'s exclusion from the regular rate calculation. In order to qualify for the payout program, the employees were first required to "come to work regularly for a period of several years in order to amass the requisite six month sick leave reserve." *Id.* They then had to "accrue additional sick leave in the present year in order to be eligible for buy-back." *Id.* The Eighth Circuit "recognize[s] consistent workplace attendance to be a general duty of employment" and therefore held that the sick leave payout monies

constituted remuneration for employment, because the effect of the program was to encourage such consistent attendance. *Id.* The Eighth Circuit also noted that the "sick leave buy-back monies do not resemble any of the payments expressly excluded under § 207(e)(2)" and that the funds in question, in contrast to the enumerated exclusions in § 207(e)(2), "are awarded to employees for coming to work consistently, not for work that was never performed." *Id.* at 977 n.10. Finally, the *Acton* court warned that "the 'remuneration for employment' determination is a highly fact-intensive question that focuses narrowly on the specific operation of the program at issue." *Id.* at 978 n.11.

Here, the pay for hours thirty-nine and forty are not tied to any job duty, specific or general. As the City argues, "Shepard is free to spend those two hours any way he likes." Reply Brief at 4. The City argues that the payments for hours thirty-nine and forty are made not for duties such as preliminary or postliminary work activities, waiting for work, "on call" time, or travel time. Those monies must be included in the regular rate pursuant to 29 C.F.R. §§ 778.320, 778.223. *Id.* at 3-4. Unlike hours for those activities, the City maintains that hours thirty-nine and forty are "more akin to 'benefits like vacation time, in which an employee is paid for time which he does not work.'" *Id.* at 4 (quoting *Adoma v. Univ. of Phoenix, Inc.*, 779 F. Supp. 2d 1126, 1134 (E.D. Cal. 2011)). The court agrees with this analysis. The instant action is dissimilar to *Acton* in that the monies in question are tied not to "a period of several years," but to Shepard's regular workweek. Shepard does not need to accrue or bank hours to be entitled to the monies at issue, instead they are paid as a matter of course. The monies are similar to holiday or personal time in that they are paid for "work that was never performed." *Acton*, 436 F.3d at 977 n.10. Accordingly, the court finds that, even if it is incorrect with respect to its earlier determination that Shepard is paid as an hourly employee for forty hours a week, the City need not include the pay from hours thirty-nine and forty in the regular rate calculation. Because the pay for those hours is removed from the regular rate calculation, the number

of hours that Shepard's wages are meant to compensate him for must similarly be reduced to the amount of hours he actually worked—in this case thirty-eight. *See Brantley*, 821 F. Supp. 2d at 983. The regular rate calculation, the quotient of Shepard's total remuneration less statutory exceptions and the amount of hours such remuneration is intended to compensate, would just be the contractual rate. *Cf.* Brief in Support of the Motion at 20. Therefore, the court finds that the correct base regular rate is Shepard's contractual rate.[7]

The City pays Shepard his contractual rate for forty hours a week, and the uncontroverted evidence demonstrates that the City intended to compensate Shepard for forty hours of work, regardless of the number of hours he is actually required to work under the Letter Agreement. Alternatively, hours thirty-nine and forty are not intended to be remuneration for employment and, thus, are excludable from the regular rate pursuant to § 207(e)(2). Because they are excluded from the regular rate calculation, Shepard's base regular rate is still his contractual rate. Shepard has neither brought forth evidence raising a genuine issue of material fact for trial nor demonstrated that he should prevail as a matter of law. Shepard's base regular rate is just his contract rate, and it is

---

[7] The City also relies on several cases, none of which are binding or even from this circuit, to argue that if the City must include the compensation for hours worked in the "remuneration" numerator of the regular rate calculation, then it must be permitted to include hours thirty-nine and forty in the "hours compensated" denominator. Brief in Support of the Motion at 16-19 (citing *Vasquez v. TWC Admin. LLC*, No. 14-CV-7621, 2015 WL 2084486 (C.D. Cal. May 4, 2015); *Thompson v. Direct Gen. Consumer Prods., Inc.*, No. 3:12-1093, 2015 WL 2366157 (M.D. Tenn. May 8, 2015)). Without relying on these cases, the court notes that this mode of analysis is substantially similar to the court's analysis. For example, because Shepard is functionally paid for forty hours of work at the contractual rate, the regular rate calculation urged by the City would include the compensation for hours thirty-nine and forty in the numerator, and hours thirty-nine and forty in the denominator. If the court treats the pay associated with hours thirty-nine and forty as excluded from the numerator pursuant to § 207(e)(2), then it does not factor those hours into the denominator. In both situations, the regular rate is the same—the contract rate provided in the CBA.

undisputed that Shepard has been paid one and one-half his hourly rate for all statutory overtime hours. Defendant's Statement of Material Facts ¶ 37. Accordingly, the court shall grant summary judgment to the extent that the City is deficient in its overtime payments due to an improperly calculated base regular rate.

### 3. How the City must account for longevity pay and sick leave payout

Neither the City nor Shepard disputes that the City must include Shepard's longevity pay and sick leave payout bonuses into his FLSA overtime calculation. "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation." 29 C.F.R. § 778.209(a). The court will address these two bonuses and how they must be factored into the regular rate, in turn.

#### a. The longevity pay calculation

Longevity pay is includible in the regular rate. Though the Eighth Circuit has not yet ruled on this issue, the City observes that "most courts have held that where the longevity bonus is nondiscretionary and paid according to a collective bargaining agreement, the longevity pay must be included in the regular rate when calculating overtime premium." Brief in Support of the Motion at 20 (citing *O'Brien*, 350 F.3d at 296); *see Theisen v. City of Maple Grove*, 41 F. Supp. 2d 932, 938 (D. Minn. 1999) (holding that longevity payments provided for in a collective bargaining agreement must be included in the employee's regular rate calculation because they were nondiscretionary); *see also Wheeler v. Hampton Twp.*, 399 F.3d 238, 248 n.12 (3d Cir. 2005); *Featsent v. City of Youngstown*, 70 F.3d 900, 905 (6th Cir. 1995) (holding that longevity payments were includible in employees' regular rate calculation because they "compensate the . . . [employees] for their service to the City"). *But see Moreau v. Klevenhagen*, 956 F.2d 516, 520-21 (5th Cir. 1992) (holding that longevity payments constituted "gifts" to employees and need not be included in the regular rate where the longevity payments were

not required under a city ordinance or collective bargaining agreement). The court finds that longevity pay must be included in Shepard's FLSA overtime premium calculation.

The Code of Federal Regulations provides that, where a bonus includible in the regular rate is meant to cover only one workweek, "[t]he amount of the bonus is merely added to the other earnings of the employee . . . and the total divided by total hours worked." 29 C.F.R. § 778.209(a). However, where the bonus is meant to encompass more than one workweek,

> the employer may disregard the bonus in computing the regular hourly rate until such time as the amount of the bonus can be ascertained. Until that is done he may pay compensation for overtime at one and one-half times the hourly rate paid by the employee, exclusive of the bonus. When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week.

29 C.F.R. § 778.209(a). The City has determined that the proper method of factoring in the longevity bonus is to determine the product of: (1) the quotient of (i) the dollar value of the longevity bonus paid in that bi-weekly pay period; and (ii) the total number of hours Shepard actually worked in that pay period; (2) .5; and (3) the number of statutory overtime hours Shepard actually worked in that pay period. Brief in Support of the Motion at 26. That number represents the FLSA overtime liability owed to Shepard in a given pay period.

The court finds that the City's FLSA overtime premium calculation is correct. The court initially notes that the City has complied with the prerequisites for applying § 778.209(a). At all relevant times, the City has paid compensation for statutory overtime

at one and one-half times the hourly rate applicable to Shepard. Defendant's Statement of Material Facts ¶ 37.[8] Because the longevity bonus is intended to cover more than one workweek—here the entire month—§ 778.209(a) applies. The City's position is that the "hourly rate of pay allocable to the bonus," 29 C.F.R. § 778.209(a), is determined by dividing the longevity pay allocable to the pay period by the total number of hours worked for that pay period. *See* Brief in Support of the Motion at 26. Shepard argues that the hourly rate of pay allocable to the bonus must be determined by allocating the biweekly longevity payment reflected on his pay stubs to each work week and then dividing that amount by "the hours of the 'normal, non-overtime workweek for which he is employed'"—in this instance thirty-eight. The court finds that the language of § 778.209(a) suggests that the "hourly rate of pay allocable to the bonus" must be tied to the hours that the bonus being allocated is intended to cover. In the instant action, there can be no question that the bonus is intended to cover all hours worked in a given pay period. The longevity bonus is a set amount paid irrespective of the hours worked. Defendant's Statement of Material Facts ¶¶ 16-17. Because the bonus is not tied to a set number of hours and is paid at a constant rate regardless of the number of hours worked, the logical reading of the bonus is that it covers all hours worked in the relevant period.

---

[8] Shepard claims to dispute this fact. Brief in Support of the Resistance at 15. However, this alone does not create a genuine issue of material fact sufficient to defeat summary judgment. Shepard misunderstands the City's position in this respect. He apparently reads the City's statement that "[i]t is undisputed that the City has already paid Shepard time and one-half his hourly rate for all hours worked over [forty]" as claiming it has paid him time and one-half his *regular* rate for all hours worked over forty. Brief in Support of the Motion at 24; *see* Brief in Support of the Resistance at 15. If that is what the City had meant, Shepard would be correct insofar as he has disputed this fact. However, the City's statement refers only to the contractual hourly rate set forth in the CBA. Shepard does not contend that he has not been paid one and one-half times his contractual rate for hours worked in excess of forty. *See* Defendant's Statement of Material Facts ¶ 37; Resistance to Defendant's Statement of Material Facts at 3.

Accordingly, the court finds that the City's calculation of the "hourly rate allocable to the bonus" is correct.

Additionally, Shepard argues that these bonus overtime premiums must be calculated by multiplying the hourly rate allocable to the bonus by 1.5 rather than .5. *See* Appendix at 183. However, this cuts against the plain language of 29 C.F.R. § 778.209. The Code of Federal Regulations provides for a .5 multiplier because one of the prerequisites to using the method contained in § 778.209 is that the employer has been paying one and one-half times the employee's hourly rate for any statutory overtime in the period which the bonus is intended to cover. 29 C.F.R. § 778.209(a). Because the employer has already paid one and one-half times the hourly rate during that period, to require the employer to use a 1.5 multiplier would, as the City argues, essentially force the employer to compensate the employee at "'two and one-half times the regular rate for each overtime hour worked, which is more than the one and one-half that the FLSA requires.'" Brief in Support of the Motion at 25 (quoting *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1313 (10th Cir. 2011)). Accordingly, the court finds that the City's FLSA overtime premium calculation method is correct.[9]

_____

[9] The City uses a pay period by pay period method of allocating the overtime premium allocable to the longevity bonus, even though the Code of Federal Regulations provides for a workweek by workweek calculation. However, upon the court's review of these methods, the court finds that the City's method does not circumvent the FLSA and is acceptable. The pay period by pay period allocation of the longevity bonus actually results in a higher FLSA premium being owed due to the longevity bonus than if the City had calculated the bonus on a workweek by workweek basis. For example, for Shepard's July 25, 2014 paycheck, the City determined that it owed Shepard a $3.37 premium due to the longevity payment. Appendix at 135, 174. It came to this conclusion by utilizing the method the court discussed above. If the City had calculated the FLSA overtime premium on a workweek by workweek basis, it would have owed only a $3.26 premium. In week one, the City would take the longevity pay allocable to that week, or $23.075, and divide it by the total hours worked, or 43.27, to give the regular rate allocable to the

(continued...)

### b.     *The sick leave payout calculation*

As the court previously discussed, the Eighth Circuit in *Acton* held that sick leave payout or buyback programs must be included in the regular rate calculation.  "[T]he primary effect of the [sick leave] buy-back program is to encourage [employees] to come to work regularly over a significant period of their employment tenure.  We recognize consistent workplace attendance to be a general duty of employment and, therefore, rule that sick leave buy-back monies constitute remuneration for employment."  *Acton*, 436 F.3d at 977; *see also Chavez*, 630 F.3d at 1309-10 (citing *Acton* with approval and noting that, because employees have a duty not to abuse sick-leave, such buy-back programs are "compensation for additional service or value received by the employer, and are analogous to attendance bonuses").  Accordingly, the City must include the sick leave payout monies in its calculation of Shepard's FLSA overtime premiums owed.

"If it is impossible to allocate the bonus among the workweeks of the period in proportion to the amount of the bonus actually earned each week, some other reasonable and equitable method of allocation must be adopted."  29 C.F.R. § 778.209(b).

> For example, . . . if there are facts which make it inappropriate to assume equal bonus earnings for each workweek, it may be reasonable and equitable to assume that the employee earned an equal amount of bonus each hour of the pay period and the resultant hourly increase may be determined by dividing the total bonus by the number of hours worked by the employee during the period for which it is paid.

---

[9](…continued)
bonus.  That would then be multiplied by .5 and then that amount multiplied by the number of statutory overtime hours worked, or 3.27.  This would result in a $0.87 premium for week one.  Applying that same formula to week two—$23.075 divided by 50.43 hours worked, multiplied by .5 and then by 10.43—yields a $2.39 premium.  Combining weeks one and two together creates a $3.26 premium.  Shepard is better off by the City's calculating the premium on a pay period by pay period, rather than workweek by workweek, basis and, therefore, the court will not disturb this method.

> The additional compensation due for the overtime workweeks in the period may then be computed by multiplying the total number of statutory overtime hours worked in each such workweek during the period by one-half this hourly increase.

29 C.F.R. § 778.209(b). The City argues that, "because [the] sick leave payout represents unused sick leave over an entire fiscal year and is paid out at the conclusion of the fiscal year, and because the employee's non-use of sick leave would most likely not be uniform across each pay period," the appropriate method is the one outlined in the Code of Federal Regulations section just quoted. Brief in Support of the Motion at 26. The court agrees.

The City calculates the sick leave payout bonus overtime premium to be the product of: (1) the quotient of (i) the total dollar value of the sick leave paid out to Shepard for the fiscal year; and (ii) the total number of hours Shepard actually worked for that fiscal year; (2) .5; and (3) the number of statutory overtime hours Shepard actually worked in a given workweek. Brief in Support of the Motion at 26-27. Shepard again argues that the City should not calculate the overtime premium based on the number of hours actually worked but based upon "CBA annual hours (1,995)." Appendix at 222. However, the plain language of § 778.209(b) provides that the total bonus is to be divided "*by the number of hours worked* by the employee." 29 C.F.R. § 778.209(b) (emphasis added). The Code of Federal Regulations does not reference the number of scheduled hours, the number of contractual hours, the number of hours normally worked in a workweek or a similar phrase. A natural reading of the language suggests that total number of hours worked is the correct number to use. The City's method is further supported by a Department of Labor Opinion Letter that expressly authorizes the City's exact method of calculating the sick leave payout overtime premiums. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2006 WL 4512950 at *2, (May 11, 2006). The court finds no reason to doubt that the City's method is proper. Shepard again argues that the proper multiplier for the rate allocable to the bonus is 1.5, rather than .5. *See* Appendix at 222. However, for

the reasons previously stated, the court finds that .5 is the appropriate multiplier. Accordingly, the court finds that the City's method of calculating the sick leave payout overtime premium is correct.

## B. *Contractual Overtime Premium Credits*

The City argues that it "is entitled to a credit against any FLSA liability for the 'extra compensation' paid for [statutory overtime] hours either pursuant to subsection 207(e)(5) or subsection 207(e)(6)." Brief in Support of the Motion at 23. The FLSA provides that the regular rate need not include "extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked . . . in excess of the employee's normal working hours or regular working hours, as the case may be[.]" 29 U.S.C. § 207(e)(5). It further provides that the regular rate need not include "extra compensation provided by a premium rate paid for work by the employee on . . . regular days of rest . . . where such premium rate is not less than one and one-half times the rate established in good faith for like performance in nonovertime hours on other days." 29 U.S.C. § 207(e)(6). If the employer pays such premium rates, the "extra compensation" paid on such rates "shall be creditable toward overtime compensation payable pursuant to th[e] [FLSA]." 29 U.S.C. § 207(h)(2); *see also Wheeler v. Hampton Twp.*, 399 F.3d 238, 245 (3d Cir. 2005) ("Section 207 provides that employers may credit premium payments for work outside standard work periods against statutorily required overtime pay . . . . 'Extra compensation' is pay at a 'premium rate' for hours worked. Such 'extra compensation' is a kind of overtime compensation, and thus need not be added to the regular rate. Likewise, such compensation may be credited against the Act's required overtime pay."); *Herman v. Fabri-Ctrs. of Am.*, 308 F.3d 580, 587 (6th Cir. 2002) (presuming that overtime premiums are creditable against overtime compensation owed); *Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1147 (7th Cir. 2001) (providing that premium payments at one and one-half times employees'

regular rates for work performed outside their regular hours was creditable against overtime owed); *Alexander v. United States*, 32 F.3d 1571, 1575 n.4 (Fed. Cir. 1994) ("[T]he term 'creditable' means that the [employer] can deduct premium pay excluded from the regular rate under 29 U.S.C. § 207(e)(5)-(7) from the FLSA overtime pay.").

The court will first consider whether the City may claim credits pursuant to §§ 207(e)(5) and (e)(6). It will then determine whether the City may apply those credits cumulatively, on a pay period by pay period basis or on a workweek by workweek basis.

### 1. *Whether the City is entitled to credits*

Initially, the court clarifies which hours the City claims that it is entitled to credits for. The City argues that, because Shepard is only paid straight time—*i.e.*, the hourly rate set forth in the CBA—for his regular weekend shifts, and any time paid outside of those weekend shifts is contractually paid at one and one-half his hourly rate, those earnings constitute contractual premiums and the City may claim FLSA overtime credits against them. Brief in Support of the Motion at 22-23. Specifically, if Shepard works hours thirty-nine and forty at any time, he is paid at one and one-half times his hourly rate, which the FLSA does not require. *See* 29 U.S.C. § 207(a)(1) (providing for a forty hour workweek and requiring that the employee be paid one and one-half times the regular rate for hours "in excess of the hours above specified"). "Likewise, if Shepard takes vacation for his regular Saturday and Sunday shifts, and then works a Monday through Friday shift, he receives a[] [contractual] overtime premium for the weekday shift . . . which would not be required by the FLSA since his hours would not exceed [forty] per week." Brief in Support of the Motion at 23; *see also, e.g.*, *Boll v. Fed. Reserve Bank of St. Louis*, 365 F.Supp. 637, 646-47 (E.D. Mo. 1973) ("There is no provision in the Fair Labor Standards Act which requires the payment by employees for absence from work for vacation, holidays, illness, or any other reason. . . . [T]he time need not be counted as working time." (quoting Clarence T. Lindquist, Wage-Hour Adm'r, Dep't of Labor (Aug. 31,

1962)).  These hours, paid at a contractual premium rate, are worked prior to Shepard's amassing forty working hours in a workweek.  Therefore the City does not need to pay him one and one-half times his regular rate for such hours under the statute.  That the City does is what makes these hours potentially creditable against FLSA liability.

The Code of Federal Regulations provides that, in order to qualify as an "overtime premium" under §§ 207(e)(5) or (6), "the extra compensation for overtime hours must be paid pursuant to a *premium rate*."  29 C.F.R. § 778.308(a) (emphasis added).  To qualify as a premium rate under § 207(e)(5), "the overtime rate must be greater than the regular rate, either a fixed amount per hour or a multiple of the nonovertime rate, such as one and one-third, one and one-half or two times that rate."  29 C.F.R. § 778.08(b).  To qualify as a premium rate under § 207(e)(6), "the overtime rate may not be less than one and one-half times the bonafide rate established in good faith for like work performed during nonovertime hours."  *Id.*  It is undisputed that all hours Shepard works outside his regularly scheduled, thirty-eight hour workweek are paid at one and one-half times the hourly rate set forth in the CBA, and Shepard's pay stubs reflect this fact.  Defendant's Statement of Material Facts ¶¶ 11, 37; Appendix at 80-167.  Shepard argues that he is not paid a premium rate because the City miscalculates his regular rate.  Resistance to Defendant's Statement of Material Facts ¶ 75.  However, because the court has found that Shepard's regular rate is his contractual rate, the City's payment of one and one-half times the contractual rate is indeed a true premium under the FLSA.  Accordingly, the court finds that the contractual overtime payments made for the hours discussed above are paid at a premium rate.

### a.    *Section 207(e)(5)*

The primary consideration when determining whether contractual overtime premiums qualify under § 207(e)(5) is whether such compensation is "paid for certain hours worked" outside of the employee's normally scheduled hours.   29 U.S.C.

§ 207(e)(5); *see Acton*, 436 F.3d at 979-80 (holding that sick leave buy-back monies were not excludable under the FLSA because the payments could not be traced to specific hours worked, the payments were, "at best, premium payments for *working normally scheduled hours*" and because they were not actually paid at a premium rate (emphasis added)); *see also Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513, 531 (S.D.N.Y. 2014) (agreeing that a CBA providing for a seven hour workday and thirty-five hour workweek, with all hours worked in excess of the schedule being paid at time-and-a-half, falls under § 207(e)(5)); *Lemieux v. City of Holyoke*, 740 F. Supp. 2d 246, 256-57 (D. Mass. 2010) (providing that a program that compensated firefighters for doing fire education classes at one and one-half times the contractual rate when such classes were taught "outside of a firefighter's regular duty cycle" qualifies under § 207(e)(5)). The Code of Federal Regulations provides further guidance. It states that,

> where the employee's normal or regular daily or weekly working hours are greater or less than 8 hours and 40 hours respectively and his contract provides for the payment of premium rates for work in excess of such normal or regular hours of work for the day or week (such as 7 in a day or 35 in a week) the extra compensation provided by such premium rates, paid for excessive hours, is a true overtime premium . . . and it may be credited toward overtime compensation due under the [FLSA].

29 C.F.R. § 778.202(b).

The hours and credits claimed by the City fall within § 207(e)(5). As the court has previously found, the City pays a true premium rate of one and one-half times the regular rate for all such hours worked. The contractual premium pay is directly tied to the hours actually worked, as reelected by the fact that it is paid on an hourly basis. Any time Shepard works more than his regular weekend shift, the City is entitled to two hours worth of premium credit (hours thirty-nine and forty). Those hours will always be hours—compensated at a contractual premium rate—worked in excess of Shepard's

regularly scheduled hours. Similarly, where Shepard is paid overtime on a day he is regularly scheduled to work, he is paid at one and one-half times his contractual rate. *See, e.g.*, Appendix at 103 (reflecting that, on May 19, 2013, Shepard worked 20.42, which is 1.42 hours in excess of his regularly scheduled shift, and was paid 1.42 hours of overtime at time-and-a-half). These hours, paid at a premium, are clearly "in excess of the employee's normal working hours" under the statute, and thus entitled to premium credit. 29 U.S.C. § 207(e)(5).

Where Shepard actually works forty or fewer hours in a week, but receives contractual premiums on some of those hours, it is less clear whether such premiums are creditable under § 207(e)(5). In such an instance, Shepard is being compensated at a premium rate, not for working hours in excess of his regularly scheduled hours, but for working hours at a different time than what he is regularly scheduled for. Courts are directed that,

> [i]n applying these rules to situations where it is the custom to pay employees for hours during which no work is performed due to vacation, holiday, illness, . . . [etc.,] it is permissible (but not required) to count these hours as hours worked in determining the amount of overtime premium pay, due for hours in excess of . . . the applicable maximum hours standard, which may be . . . credited toward the statutory overtime compensation.

29 C.F.R. § 778.202(a). This is exactly what the City does when Shepard works fewer than forty hours but receives a contractual premium. The City's custom is to pay employees personal and holiday time, Defendant's Statement of Material Facts ¶¶ 65-68, which then allows it to count such hours toward the hours Shepard is regularly scheduled to work. Any hours worked outside of his regularly scheduled hours, then, would be "in excess" of those hours and thus creditable under § 207(e)(5). For example, if Shepard takes vacation for one of his weekend shifts, because it is the City's custom to compensate him for such time, it may count that shift as "hours worked" during his regular workweek

of thirty-eight hours, making any shift worked outside of his normal shift "in excess" of the thirty-eight hour workweek.  Any contractual premium the City pays on the excess shift may then be credited against the City's overtime liability.  Accordingly, the court finds that the hours and credits the City claims are creditable under § 207(e)(5).

### b.  Section 207(e)(6)

Under § 207(e)(6), the premium pay must not be "less than one and one-half times the rate established in good faith for like work performed in nonovertime hours."  29 U.S.C. § 207(e)(6).  The premium pay must also occur for work performed on a "regular day of rest."  *Id.*  "The term 'regular day of rest' means a day on which the employee in accordance with his regular prearranged schedule is not expected to report for work.  In some instances the 'regular day of rest' occurs on the same . . . days each week for a particular employee."  29 C.F.R. § 778.203(c).  The premium paid on such days "must be paid because work is performed on the days specified and not for some other reason which would not qualify the premium as an overtime premium under [§§] 207(e)(5), (6) or (7)."  29 C.F.R. § 778.203(d).

The Letter Agreement provides that Shepard's "regular" workweek is just his nineteen hour Saturday and Sunday shifts.  Appendix at 168.  By extension, every other day of the week is considered a "regular day of rest" under the FLSA and the Code of Federal Regulations.  The Letter Agreement further provides for a true premium payment, at the acceptable rate of one and one-half times Shepard's regular rate.  Therefore, whenever Shepard works a weekday, he is working on a regular day of rest at a premium rate.  Accordingly, the court finds that *all* hours worked under forty outside of Saturday and Sunday qualify for credits under § 207(e)(6).  Therefore, under §§ 207(e)(5) or (6), the court finds that the City is entitled to credit contractual premiums paid against potential FLSA overtime liability.

## 2. On what basis the City may apply the credits

The court is aware of three general methods for applying overtime credits: (1) cumulatively by totaling all FLSA liability and netting it against the total overtime credits for the relevant time period; (2) on a pay period by pay period basis by totaling the FLSA liability between the workweeks in a pay period and netting that amount against the overtime credits the employer may claim for a pay period; and (3) on a workweek by workweek basis by applying the credits directly against any FLSA liability in a single workweek. *See, e.g.*, *Kohlheim v. Glynn Cty., Ga.*, 915 F.2d 1473, 1481 (11th Cir. 1990) (approving of a cumulative crediting method); *Herman*, 308 F.3d at 580 (finding that a pay period by pay period application of credits was appropriate); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1260 (9th Cir. 2014) (finding a workweek by workweek application of credits was appropriate), *cert. denied* 135 S. Ct. 18 (2014). The City assumes that the credits should be applied on a pay period by pay period basis. Brief in Support of the Motion at 24. Shepard argues that applying credits on a pay period by pay period basis is inappropriate, arguing that "this practice is nothing more than 'averaging' which is expressly forbidden in 29 C.F.R. [§ 778.104, which states] . . . that each pay week stands alone." Plaintiff's Calculation (docket no. 15-2) at 2. While Shepard misunderstands the purpose of 29 C.F.R. § 778.104, which provides that an employer may not average the number of hours worked between the two workweeks to avoid overtime liability,[10] the court will nevertheless consider whether a workweek by workweek, rather than pay period by pay period, application of overtime credits is warranted.

In regards to whether overtime premium credits may be applied cumulatively, or on some more particularized basis, the court finds that the correct interpretation of the

---

[10] For example, "if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40." 29 C.F.R. § 778.104.

FLSA requires employers to apply overtime credits on either a pay period by pay period or workweek by workweek basis. In *Herman v. Fabri-Centers of America*, the Sixth Circuit Court of Appeals considered whether employers must apply overtime credits on a pay period by pay period or cumulative basis and determined that a pay period by pay period application of overtime premium credits more closely comported with legislative intent and the spirit of the statute. 308 F.3d at 587-88. The *Herman* court noted that the credit language of § 207(h)(2) came as a direct response to the Supreme Court's decision in *Bay Ridge v. Aaron*, 334 U.S. 446 (1948). In *Bay Ridge*, the Supreme Court held that a contractual "higher rate paid as a job differential or as a shift differential, or for Sunday or holiday work, is not an overtime premium" and, thus, the employer was required to include such higher rates in its regular rate calculation. 334 U.S. at 466. As the *Herman* court observed, this reasoning essentially required employers to pay "overtime on overtime." *Herman*, 308 F.3d at 587-88. "[T]he problem of employees receiving statutory overtime that included contractual premiums, as required by *Bay Ridge*, was solved by the enactment of sections 7(e)(5), (6) and (7) [of the FLSA], which explicitly reference the workweek." *Id.* at 587. Thus, the *Herman* court reasoned that the legislative history behind these amendments "supports the notion that the work week or work period is central to an understanding of § 207(h)(2)." *Id.* Similarly, the Seventh Circuit Court of Appeals in *Howard v. City of Springfield, Ill.* concluded that allowing an employer to "pay its overtime obligations at a time far removed from when that overtime amount was due" was inappropriate and patently undermined the "statutory requirement that overtime payments must be timely made." 274 F.3d at 1148. The *Howard* court observed that, "if the [employer] were able to use premium payments [cumulatively] . . ., the [employer] would be the recipient of [a] windfall, and in fact would be placed in a substantially better position than if it had complied with the overtime requirements of the FLSA all along." *Id.* Thus, it determined that both the text of the statute and policy

concerns support a reading of § 207(h)(2) that requires employers to apply overtime credits on a pay period by pay period basis. *Id.*

The court agrees with the reasoning provided in *Herman* and *Howard*. Without reiterating the analyses above, the court finds that both the goals of the statute and the statute's text support a finding that a particularized, rather than cumulative, application of the overtime credits allowable to the City under §§ 207(e)(5)-(7) is not only warranted, but required. The court is aware of only one jurisdiction that requires application of overtime credits on a workweek by workweek basis. In *Haro v. City of Los Angeles*, the Ninth Circuit Court of Appeals expressly rejected the pay period by pay period calculation method in favor of a method based on workweeks. 745 F.3d at 1260. The Ninth Circuit in *Haro* cited *Herman* and *Howard* with approval, but took a more restrictive reading of the statute than either the Sixth or Seventh Circuit. The *Haro* court reasoned that,

> [w]hile § 207(h) does not state whether credits must be determined on a workweek basis, it must still be read within the context of the overtime due under § 207(a), which is calculated on a workweek basis. Under this reading, compensation already paid for work done within one workweek should not be transferrable and offset against overtime due in another workweek.

*Id.* at 1259-60. Accordingly, the Ninth Circuit held that overtime premium credits can only be applied to statutory overtime deficiencies incurred in the same workweek that the credits were accrued.

Initially, the court notes that the Eighth Circuit has not yet ruled on this question. However, the court finds that the pay period limitation imposed by *Herman* and *Howard* is the appropriate standard to apply in these types of disputes. The pragmatic reality of the employment situation for the vast majority of employees is that overtime, while it may be calculated on a workweek by workweek basis, is not generally paid or payable until the pay period ends. *Cf.* 29 C.F.R. § 790.21 (providing that "a cause of action under the Fair

Labor Standards Act for . . . unpaid overtime compensation . . . 'accrues' when the employer fails to pay the required compensation for any workweek *at the regular pay day for the period in which the workweek ends*" (emphasis added)); *see also Hartt v. United Const. Co., Inc.*, 655 F. Supp. 937, 938 (W.D. Mo. 1987), *aff'd*, 909 F.2d 508 (8th Cir. 1990) (noting that "a cause of action 'accrues' at each regular payday immediately following the work period during which the services were rendered and for which the compensation is claimed"). Furthermore, pursuant to 29 C.F.R. § 778.106, while overtime is to be computed weekly, "[t]here is no requirement in the [FLSA] that overtime compensation be *paid* weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular day for the period in which such workweek ends." 29 C.F.R. § 778.106 (emphasis added). The fact that overtime compensation need not actually be paid until the pay period is over supports a reading of § 207(h)(2) which authorizes the application of credits on a pay period by pay period basis.

It does not frustrate the purposes of the overtime provisions of the FLSA to allow the City to apply overtime premium credits on a pay period by pay period basis—such a practice neither divorces the application of overtime premium credits from the relevant time period for which the FLSA overtime payments were due nor places the employer in a substantially better position than if it had complied with the overtime requirements of the FLSA all along, two considerations driving the Seventh Circuit's analysis in *Howard*. In fact, in conjunction with 29 C.F.R. § 778.106, applying overtime premium credits on a pay period by pay period basis ensures the employer is complying with the overtime provisions of the FLSA as overtime becomes due. *See Howard*, 274 F.3d at 1148 (noting that, "[i]f the City had complied with the FLSA all along, it would have paid the overtime each pay period as it accrued" and that "[s]ubsequent premium payments [w]ould not [need to] be used to reduce those overtime payments, because they would have already . . . been calculated and paid"). In other words, the pay period by pay period method ensures that

any premium credits are actually accrued and applied contemporaneously with overtime liability as it is incurred and due. No party gains a windfall by authorizing the employer to apply credits on a pay period by pay period basis. Accordingly, the court finds that an appropriate method of applying overtime premium credits pursuant to § 207(h)(2) is on a pay period by pay period basis.

### 3. The City's credits calculation

The City claims credits equal to the product of: (1) the difference between (a) the total number of overtime hours—including both contractual and statutory—paid to Shepard in a workweek; and (b) the number of statutory overtime hours worked that week; (2) .5; and (3) Shepard's applicable contractual hourly rate. The difference between total overtime hours paid and statutory overtime hours paid yields the contractual overtime hours paid at a premium rate, which represents the hours the City may claim credit for under §§ 207(e)(5) and (6) as the court has previously discussed. The product of .5 and Shepard's hourly rate yields the creditable rate attributable to the premium. The premium rate in this instance is one and one half times Shepard's hourly rate. The statute and regulations make clear that only that portion of the premium rate that is actually a premium may be credited toward any FLSA liability. *See* 29 U.S.C. § 207(h)(2) (providing that only the "extra compensation" attributable to the premium rate may be used to credit against overtime liability); 29 C.F.R. §§ 778.202, 778.203 (reiterating the "extra compensation" standard from the FLSA). Because the hours for which Shepard is paid the premium rates are all hours worked below forty in a given workweek, and, thus, are payable at the straight contract rate, the only "extra compensation" provided by such premiums is the one-half rate above the regular rate. The City calculates this one-half rate by multiplying the applicable hourly rate by .5. A more conceptually sound method would be to subtract the regular rate from the premium rate paid. However, the City's calculation method, though conceptually incorrect, nevertheless accurately captures the

correct amount of "extra compensation" attributable to premium pay in accordance with §§ 207(e)(5) and (6). Accordingly, the court finds that the City's credit calculation method is correct.

The City also provides a method for determining whether the credits are sufficient to cover any potential FLSA liability. The City's payroll system provides for payment on each pay period denoted as "FLSA – FLSA PAY."[11] Defendant's Statement of Material Facts ¶ 64; *see, e.g.*, Appendix at 117. The current payroll system calculates this payment

> by adding up all of the longevity payments made in the prior year, dividing that number by the total hour[s] the employee was scheduled to work to arrive at an hourly rate, dividing that hourly rate in half, and then multiplying that half rate by the number of [statutory and contractual overtime] hours worked.

Defendant's Statement of Material Facts ¶ 64. This calculation is intended to compensate employees for additional monies they are owed under the FLSA for overtime worked and allocable to the longevity bonus. *Id.* Accordingly, the City has attempted, throughout the relevant period, to compensate Shepard for additional FLSA overtime payments due to the longevity payment. These monies, paid to Shepard as they became due, may also serve to "offset" potential FLSA liability in a given week. This is not a true offset, but rather a recognition that the City has already satisfied its obligation to pay overtime allocable to the longevity payment. The City determines any FLSA liability by adding up any longevity bonus overtime premium and the sick leave payout overtime premium for a given pay period—which represent the total additional FLSA pay owed to Shepard for a given pay period—and subtracting any "FLSA – FLSA PAY" amount reflected on that pay period's pay stub. Brief in Support of the Motion at 27. Then, assuming any FLSA liability remains, the City compares that amount to the total credits the City is entitled to

---

[11] The old payroll system denoted this payment as "Premium Hours." Defendant's Statement of Material Facts ¶ 64; *see, e.g.*, Appendix at 83.

as the court just discussed. *Id*. After performing its recalculation, the City maintains that, "in all cases where the FLSA premium pay actually paid to Shepard was less than the amount he was owed, this deficiency was more than offset by the amount of credits the City is entitled to take against such deficiency." *Id*. at 28. The court finds this method to be correct.[12]

## C. The FLSA Overtime Calculation

Having detailed what Shepard's appropriate regular rate is and whether and in what manner the City may claim contractual overtime premiums, the court will now consider whether, under the relevant calculations, the City is deficient in its FLSA obligations. The court has carefully reviewed the record and finds that, for the relevant period, save the specific discussion regarding Shepard's November 30 and December 14, 2012 paychecks below, the City's calculations regarding its overtime liability are correct.[13] *See* Appendix 80-167, 174.

---

[12] The court does note, however, that between February 8 and October 18, 2013, the City's payroll system failed to credit any FLSA pay due to longevity bonus on Shepard's paychecks, save for one, one-cent payment on March 8, 2013. These missed payments, due to a coding error at setup, were then paid November 1, 2013. Defendant's Statement of Material Facts ¶¶ 71-72. The City appears to credit these late FLSA payments to the weeks they were originally owed on its recalculation. *See* Appendix at 174. For the reasons the court discusses below in Part VI.C *infra*, the court finds that this practice is prohibited. However, for each of these instances, the court's review has revealed that the credits the City is entitled to take fully cover its FLSA liability for such weeks, even without the FLSA pay attributable to that paycheck. Therefore, the court finds that there has been no FLSA violation with respect to those pay periods.

[13] When the City performed its recalculation and was calculating its FLSA overtime liability attributable to the sick leave payout, it appears that, while it states the method for allocating sick leave payout monies to statutory overtime correctly, it misapplied it in practice. The City calculated the relevant statutory overtime premium rate correctly—a half-rate equal to the quotient of the sick leave payout attributable to that fiscal year and the total number of hours Shepard worked that fiscal year. However, instead of

(continued…)

However, the court finds that the City is liable for FLSA overtime underpayment for Shepard's November 30, 2012 and December 14, 2012 paychecks. These paychecks represent the period in which the City was transitioning payroll systems. Originally, the City included Shepard's regular Saturday, November 24, 2012 and Sunday, November 25, 2012 payments in the December 14, 2012 paycheck as falling under the new workweek. This is so because the City ended the normal pay period two days earlier on Friday, November 23, 2012 to facilitate the transition to the new payroll system. However, pursuant to 29 C.F.R. § 778.302, where an employee's work time falls in a period which would be includible in both the old workweek and the new workweek during a period of transition, as the November 24 and 25, 2012 shifts did, the employer must include them in the workweek which would yield a higher pay for the employee. The City admits that, at the time of the transition, it should have included the November 24 and 25, 2012 shifts

_____

[13](…continued)
multiplying that rate by the number of statutory overtime hours Shepard worked, the City multiplied the rate by the difference between paid overtime hours worked and hours for which Shepard worked but was not paid for each of the two workweeks in the pay period. Both of those hours figures were then added together. *See* Appendix at 174. While this makes conceptual sense, it can yield improper results. Take, for example, a hypothetical pay period in which Shepard works his regularly scheduled hours in one week, but works four contractual overtime hours the next week. In this example, he is paid for two hours for which he does not work in the first workweek. Under the City's calculation method this yields a negative balance of two statutory overtime hours for the first workweek. Shepard works two statutory overtime hours the second week—his thirty eight hour shift, two contractual overtime hours and two statutory overtime hours. However, netting the two weeks yields zero statutory overtime hours. This is incorrect as a matter of law, as employers are directed to determine overtime on a week-by-week basis. *See* 29 C.F.R. § 778.104. Instead, Shepard must be paid the half-rate attributable to the sick leave payout for those two hours, whereas the City's recalculation would pay him for none. However, the court has, in its review, determined that, even accounting for these miscalculations, the applicable credits the City is entitled to take for each respective pay period are still greater than the increased liability. Accordingly, the court finds that there is no FLSA liability stemming from this miscalculation.

in the old workweek under the regulation because the switch resulted in overtime liability under the old workweek. Brief in Support of the Motion at 29. However, the City argues that, even after moving the shifts to the old workweek and determining the deficiency between the pay Shepard actually received and the pay he should have received, the credits the City is entitled to take offset the additional overtime pay owed and, therefore, it incurred no liability. *See id.* at 30-33; Appendix at 174–78.

The court has reviewed the City's recalculation of Shepard's November 30, 2012 and December 14, 2012 paychecks in accordance with 29 C.F.R. § 778.302 and finds that the City's recalculation of this period suffers from a deficiency. The court finds that the City's determination of the difference between the amount actually paid and the amount owed under § 778.302 is correct. This amount is $411.85. *See* Appendix at 178. This is the amount of statutory overtime liability the City incurred with respect to the change in workweek. The City argues that the total amount of credits accrued in the new pay period running from November 12 to November 25, 2012 offsets this amount of liability. The court disagrees. The court finds that the City may not use credits from the Thursday, November 22 and Friday, November 23, 2012 shifts that Shepard worked. Shepard's November 30, 2012 paycheck reveals that he was paid only straight time for those hours, even though he was owed a contractual premium because those shifts were hours worked outside of his normal weekend shifts. *See* Appendix at 90. The City compensated Shepard three years later for the difference between the amount he was paid at his contractual rate and the amount he was owed at one and one-half times his contractual rate. Defendant's Statement of Material Facts ¶ 58. It is the City's use of these late-paid contractual premiums to credit against its FLSA liability pursuant to § 778.302 that is improper.

To allow the City to apply the credits when they were actually paid three years after they were earned would be tantamount to permitting the City to cumulate its credits, which is inappropriate. The court finds that an employer may not use credits to offset liability

for a given pay period when the payment was not actually made during that pay period. The purpose of authorizing a credits offset is to avoid the result of punishing the employer for paying more than the statute requires. *Cf. Herman*, 308 F.3d at 587-88 (discussing the purpose of §§ 207(e)(5)-(7) as avoiding forcing employers to pay overtime on overtime). To that end, the FLSA authorizes employers to offset liability under the statute with contractual premiums, on the logic that it has already paid additional monies and the employee has already received the benefit of the statutory overtime protections. However, a necessary predicate to that logic is that the employer has, in fact, actually paid the monies it claims as credits against the overtime liability. Though the court recognizes that the City eventually paid the premium for which it claims the credits, the court fails to see a practical distinction between this practice, through inadvertent, and a cumulative application of credits over a period of perhaps years.

In *Howard*, the Seventh Circuit noted that allowing employers to cumulate premium credits "would eviscerate the protection intended by the overtime payment requirement." 274 F.3d at 1148-49. The *Howard* court's concern was that divorcing the application of credits from the time that they were owed would allow the employer to "manipulate the payments to suit its economic concerns." *Id.* at 1149. The same logic applies to divorcing the payment and application of credits from the time that they were earned. For example, in a more insidious case than the instant action, the employer could intentionally refuse to pay contractual premiums, force employees to work long hours and accrue substantial overtime liability in the hopes that its employees do not realize what it is doing. Suppose this occurs regularly over the employer's busy season or when the employer is in financial straits. Then, a substantial amount of time later, an employee sues the employer for statutory overtime liability during the relevant period. Under the City's theory, the employer could then simply pay the contractual premium at that time and use those later payments to offset its statutory liability. In this instance, the employer may end up paying

the same or similar wages and overtime to the employee, but manipulates the timing of the payment of those monies for its own convenience.

To allow the employer to do so would run contrary to the requirement that overtime itself must generally be paid at the end of the pay period, or as soon after the end of the pay period as is practicable. *See* 29 C.F.R. § 778.106 (noting that "[t]he general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay date for the period in which such workweek ends"). Accordingly, courts have held that late payment of FLSA liabilities violates the statute. *See, e.g.*, *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 135 (3d Cir. 1999) (noting that requiring prompt payment of overtime liabilities allows courts to determine when they become "unpaid" in violation of the FLSA). The liquidated damages provision of the FLSA was enacted under a "recognition that failure to pay the statutory [requirements] on time may be so detrimental to the maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 708 (1945); *see also Broadus v. O.K. Indus., Inc.*, 226 F.3d 937, 943 (8th Cir. 2000) (recognizing that liquidated damages under the FLSA are "a means of compensating employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due" (quoting *Reich v. S. New England Telecomms.*, 121 F.3d 58, 70 n.4 (2d Cir. 1997) (internal quotation marks omitted))). In other words, overtime wages are meaningless unless they bear a temporal proximity to the hardship they impose. In the same way, overtime credits are meaningless unless they bear a similar proximity to the benefit they are intended to provide and the hours they are intended to compensate for. Where overtime credits are not actually paid until years after they are payable, the

employer effectively severs that temporal proximity and, thus, cannot claim them to offset earlier-incurred FLSA liability.

The court has reviewed and recalculated Shepard's November 30 and December 14, 2012 paychecks in accordance with these findings and has determined that the City is liable to Shepard in the amount of $389.19. The court arrived at this amount by netting the City's total liability pursuant to 29 C.F.R. § 778.302, which the court finds to be $411.85, and the total amount of credits the City is entitled to for that pay period, which the court finds to be $22.66. The total liability is $411.85 because, pursuant to 29 C.F.R. § 778.302(c), this recalculation "will not alter any obligation the employer may have under [its] employment contract to pay a greater amount of overtime compensation for the period in question." In performing the recalculation, courts must "compute straight time and overtime compensation *due* for each of the [two] workweeks" and compare the wages owed, which logically should include contractual overtime payments due as well. 29 C.F.R. § 778.302(a)(1) (emphasis added). The City is still entitled to two hours of premium credit from the workweek running from November 12 to November 18, 2012 because, during that time, Shepard worked and was paid for a total of nineteen contractual overtime hours but the City was only liable for seventeen statutory overtime hours. The workweek running from November 19 to November 25 had no contractual overtime premiums in the court's recalculation. Thus, two times the extra compensation paid on the premium rate for those two hours yields $22.66. The difference between the amount owed and the credits available yields the total liability of $389.19. Whether the City is allowed to use the credits at issue is a question of law and raises no genuine issue of material fact to preclude summary judgment. Accordingly, the court shall grant summary judgment in favor of Shepard in the above stated amount.

### D. Willful Violation And Liquidated Damages

Shepard contends in the Petition that the City's violation of the FLSA was "willful." Petition at 2. The City does not respond to this allegation in the Motion. The Supreme Court has defined a "willful" violation of the FLSA as one wherein "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see Jarrrett v. ERC Props., Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000) (quoting *McLaughlin*'s definition of "willful violation"). "A finding of willfulness requires behavior on the part of the employer that exceeds negligence . . . ." *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006). The burden of demonstrating that an employer's violation was wilful rests with the plaintiff. *See Davila v. Menendez*, 717 F.3d 1179, 1185 (11th Cir. 2013); *see also Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1082-83 (8th Cir. 2000) (suggesting that the burden of demonstrating willfulness rests on the plaintiff). Here, Shepard has advanced no evidence that the City's violation was willful. In fact, all evidence of record indicates that the City's violation was wholly inadvertent and, at the most, negligent. The City's failure to properly calculate the workweek switch over was not a matter of wilfully violating the law, but rather an oversight—as evidenced by the City's immediate attempt to rectify the violation in January of 2015. Mere negligence is insufficient to demonstrate a willful violation of the FLSA. In any event, Shepard has failed to demonstrate that a genuine issue of material fact exists as to whether the City's violation was willful. Accordingly, the court finds that the City's violation was not willful.

Finally, Shepard argues that "[t]he City has failed to address the penalty due for late payment" of overtime due for hours worked on Thursday, November 22 and Friday, November 23, 2012. Brief in Support of the Resistance at 16; Resistance to Defendant's Statement of Material Facts ¶ 58. Shepard worked two nineteen-hour shifts on those dates, but was paid at straight time. Defendant's Statement of Material Facts ¶¶ 55-56; Appendix

at 90.  However, per the Letter Agreement, Shepard should have been paid at one and one-half times his hourly rate for those hours, since they were worked outside his normal weekend schedule.  Defendant's Statement of Material Facts ¶ 57.  On or about January 2015, the City realized that it had committed an error as to those hours and compensated Shepard for the difference between forty hours paid at his straight rate for November 2012, and one and one-half times the hourly rate.  *Id.* ¶ 59.  This change occurred on Shepard's January 23, 2015 paycheck.  *Id.* ¶ 58; Appendix at 71-72.  Shepard contends that "[l]ate payment of a[n] FLSA obligation is the same as no payment."  *Id.* (citing 29 C.F.R. § 778.106).  He argues that liquidated damages are appropriate, equal to 100% of the late-paid FLSA obligation.  *Id.*

Shepard is correct that liquidated damages are generally awarded where the court finds an FLSA violation.  29 U.S.C. § 216(b); *see also Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008) (noting that liquidated damages are the norm).  However, the court's review of the record demonstrates that the City's late payment of the November 22 and 23, 2012 time-and-a-half was not late payment of any FLSA liability, but late payment for the City's contractual obligation under the Letter Agreement.  At the time Shepard worked the shifts in question, the City utilized a Monday through Sunday workweek.  Defendant's Statement of Material Facts ¶ 47.  Therefore, after Shepard worked the shifts in question, he had only worked thirty-eight hours during that workweek, which began on Monday, November 12, 2012.  No part of the monies paid in January of 2015—Shepard's purported "late payment"—can be said to be overtime payments under the FLSA because these hours do not represent any hours that Shepard worked over forty.  Any "late payment" arose solely from the City's contractual obligation to pay time-and-a-half.  Accordingly, the court finds that Shepard's claim that the City's late payment for the shifts in question results in liquidated damages fails as a matter of law.

However, as the court previously noted, the court has determined that the City has violated the FLSA by failing to comply with the requirements of 29 C.F.R. § 778.302. Generally, this finding requires the court to assess liquidated damages in an amount equal to the violation. *See* 29 U.S.C. § 216(b). However, "if the employer shows that its actions were taken 'in good faith' and with 'reasonable grounds for believing' that they complied with the FLSA, 'the court may, in its sound discretion, award no liquidated damages." *Chao*, 547 F.3d at 941. However, neither party's materials have discussed whether the City's violation was in good faith and was objectively reasonable. Neither party has pointed to specific evidence in the record demonstrating that the violation was in good faith and objectively reasonable. Therefore, there is no genuine issue of material fact for trial. The court, mindful that liquidated damages are the norm and single damages are the exception, shall exercise its discretion and award liquidated damages in the amount of $389.19. The total award shall be $778.38.

However, as the parties agree, Shepard received a payment in the amount of $453.20 on his January 23, 2015 paycheck that the City intended to cover the unpaid contractual overtime premiums from November of 2012. Defendant's Statement of Material Facts ¶ 58; Appendix at 77-78, 150. In actions under the FLSA, a plaintiff is entitled to be made whole, but is not entitled to a windfall. *See, e.g.*, *Lupien v. City of Marlborough*, 387 F.3d 83, 90 (1st Cir. 2004). Section 216(b) provides for compensatory damages under the FLSA in an amount equal to the "*unpaid* overtime compensation." 29 U.S.C. § 216(b) (emphasis added). Accordingly, where an employer makes payments toward overtime liability, the employer should remain responsible only for the unpaid portions. *See Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76-77 (1st Cir. 1998) (authorizing a damages calculation in which the employer was allowed to deduct payments already made toward overtime liability from the liability found under the FLSA, finding such calculation to be "'fair and permissible under the [FLSA]'" (quoting *D'Camera v.*

*Dist. of Columbia*, 722 F. Supp. 799, 803 (D.D.C. 1989)); *Martin v. Ind. Mich. Power Co.*, 292 F. Supp. 2d 947, 960 (W.D. Mich. 2002) (calculating damages by subtracting a payment an employer made intending to cover unpaid overtime liability from the total judgment of compensatory and liquidated damages in arriving at a final damages amount). "The FLSA sets a floor, not a ceiling, on compensation that employees must receive." *Barefield v. Village of Winnetka*, 81 F.3d 704, 411 (7th Cir. 1996). To entirely disregard the fact that Shepard has been paid, albeit three years late, for a portion of the overtime liability would be to grant him a windfall and punish the employer for attempting to comply with its obligations. Shepard would essentially recover his damages three times over—once in January of 2015, once as compensatory damages and once as liquidated damages. The FLSA does not demand such an outcome. To be clear, the court does not view the January 23, 2015 payment as wiping out the City's violation or liability under the FLSA, but rather as an offset against the total judgment for a payment that the City has already made. Accordingly, the court shall enter judgment in an amount equal to the difference between the total award and the payment the City made on January 23, 2015, or in the amount of $325.18.

## E. Summary

The court finds that whether the Letter Agreement or CBA controls the instant action is not properly before the court—Shepard has failed to pursue the mandatory grievance procedure to determine the CBA's applicability to him. The court also finds that Shepard's regular rate is the contract rate set forth in the CBA. The actual fact of what occurs under the employment contract is that he is paid hourly for forty hours a week. Alternatively, compensation for hours thirty-nine and forty may be excluded from the regular rate calculation pursuant to § 207(e)(2). The court finds that the City must include the longevity and sick leave payout payments in Shepard's regular rate to determine overtime liability. But the court also finds that the City may use contractual premiums

paid for hours worked outside of Shepard's normal thirty-eight hour schedule as credits to offset any potential FLSA liability pursuant to §§ 207(e)(5), (e)(6) and (h)(2). Finally, the court finds that the City's calculation of FLSA liability and credits is largely correct, but that the City's inclusion of late-paid contractual premiums to offset overtime liability incurred three years prior is inappropriate. The court finds that Shepard has not demonstrated that the City's violation was willful. Likewise, the City has not demonstrated that its violation was done in good faith and was objectively reasonable. However, because the City has made payments on the unpaid overtime liability, the City is entitled to offset the amount of that payment against the total liability incurred under the statute. Accordingly, the court shall grant in part and deny in part summary judgment in favor of the City and grant summary judgment in favor of Shepard.

## VII. COSTS AND ATTORNEYS FEES

The court's careful review of the record reveals that each party should bear its own costs and that attorneys fees will be unavailable for Shepard's pro se representation. *Cf. Kay v. Ehrler*, 499 U.S. 432, 438 (1991) (holding that pro se prevailing parties in § 1988 litigation may not recover attorneys fees because "[t]he statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case"); *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984) (noting that "the purpose of [29 U.S.C.] § 206(b) is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances"). Because Shepard has only prevailed upon a ground which he did not raise in the Petition, and because granting a pro se litigant attorneys fees which he or she has not actually incurred in a given case fails to serve the fee-shifting provision's underlying purpose, the court declines to grant attorneys fees for pro se representation. Such a finding would grant the pro se party a windfall and

encourage pro se plaintiffs to proceed without the advice of counsel, an end the Supreme Court sought to avoid in *Kay*.

### VIII. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1)     The Motion (docket no. 11) is **GRANTED IN PART AND DENIED IN PART**; and

(2)     The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff in the amount of $325.18 and to **CLOSE THIS CASE**.  The parties shall bear their own costs and attorney's fees.

The trial date is vacated.

**IT IS SO ORDERED**.

**DATED** this 15th day of December, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA